IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ENRIQUE COURTNEY HUBER | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:21-CV-89 |
| | § | |
| GALVESTON COUNTY, *et al.*, | § | |
| *Defendants*. | § | |

**GALVESTON COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE ANDREW EDISON:

Defendants Galveston County, Galveston County Sheriff's Office Deputy Toan-Khoa Huu Tran ("Officer Tran"), and Sheriff Henry Trochesset ("Sheriff Trochesset") (collectively, the "County Defendants"), file this Motion for Summary Judgment, and in support thereof show as follows:

## I.   SUMMARY

1.      Plaintiff has brought this action under 42 U.S.C. § 1983, alleging claims against the County Defendants for excessive force, conditions of confinement, inadequate medical care, failure to train or supervise, and negligence. Given the absence of a genuine issue of material fact, the County Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

## II.  TABLE OF CONTENTS

I.  SUMMARY ............................................................................. 1

II.  TABLE OF CONTENTS ...................................................... 2

III.  TABLE OF AUTHORITIES .................................................. 3

IV.  FACTUAL BACKGROUND .................................................. 7

V.  UNDISPUTED FACTS ......................................................... 8

VI.  SUMMARY JUDGMENT STANDARD ................................. 13

VII.  ARGUMENT .................................................................... 14

    A.    **Plaintiff has failed to state viable claims against County Defendants because he does not adequately state how County Defendants deprived Mr. Huber of any constitutional rights. ............ 14**

        (1)    Plaintiff has failed to properly plead Section 1983 claims and actions under "color of law." ........................................................... 18

        (2)    Plaintiff has failed to properly plead *Monell* liability. ....................... 20

            (a)    The allegation that a policymaker promulgated or ratified an alleged policy or custom is insufficient. ............... 22

            (b)    Insufficient allegations of a moving force and deliberate indifference. .......................................................... 23

    B.    **Sheriff Trochesset and Officer Tran have qualified immunity. .......... 26**

    C.    **Plaintiff cannot recover punitive damages against Galveston County. ....................................................................... 29**

VIII.  REQUEST FOR RELIEF ................................................... 29

## III.  TABLE OF AUTHORITIES

**CASES**

*Anderson v. Creighton,*
   483 U.S. 635 (1987) ................................................................................... 28

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986) ...................................................................................13

*Armstrong v. Ashley,*
   60 F.4th 262 (5th Cir. 2023) ..................................................................... 21

*Atuahene v. City of Hartford,*
   10 F. App'x 33 (2d Cir. 2001) .................................................................. 19

*Backe v. LeBlanc,*
   691 F.3d 645 (5th Cir. 2012) .................................................................... 28

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,*
   520 U.S. 297 (1997) ................................................................................... 21

*Bustos v. Martini Club,*
   599 F.3d 458 (5th Cir. 2010) .............................................................. 19, 20

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ...................................................................................13

*City of Newport v. Fact Concerts, Inc.,*
   453 U.S. 247 (1981) ................................................................................... 29

*Cobarobio v. Midland Cnty.,*
   No. MO:13-CV-00111-RAJ, 2015 U.S. Dist. LEXIS 193948
   (W.D. Tex. Jan. 7, 2015) ........................................................................... 19

*Del Castillo v. PMI Holdings N. Am. Inc.,*
   No. 4:14-CV-3435, 2015 U.S. Dist. LEXIS 80301 (S.D. Tex. June 22, 2015) ........ 19

*Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752 (5th Cir. 2001) ............................ 25

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
406 F.3d 375 (5th Cir. 2005)......................................................................24

*Estate of Henson v. Callahan*,
440 F. App'x 352 (5th Cir. 2011)...............................................................23

*Fraire v. City of Arlington*,
957 F.2d 1268 (5th Cir. 1992) ...................................................................21

*Freeman v. Texas Dep't of Crim. Just.*,
369 F.3d 854 (5th Cir. 2004) ..............................................................27, 28

*Gomez v. Toledo*,
446 U.S. 635 (1980) ...................................................................................18

*Gray v. Brazoria Cnty.*,
2017 WL 713797 (S.D. Tex. Feb. 23, 2017). ............................................27

*Hart v. Hairston*,
343 F.3d 762 (5th Cir. 2003)......................................................................13

*Hope v. Pelzer*,
536 U.S. 730 (2002) ...................................................................................28

*Jacquez v. Procunier*,
801 F.2d 789 (5th Cir. 1986) .....................................................................19

*Kentucky v. Graham*,
473 U.S. 159 (1985) ...................................................................................29

*Luna v. Davis*,
59 F.4th 713 (5th Cir. 2023) ......................................................................28

*Mace v. City of Palestine*,
333 F.3d 621 (5th Cir. 2003) .....................................................................24

*Malley v. Briggs*,
475 U.S. 335 (1986) ...................................................................................27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................. 13

*Meadours v. Ermel*,
    483 F. 3d 417 (5th Cir. 2007) ................................................................. 27

*Mendoza v. Lynaugh*,
    989 F.2d 191 (5th Cir. 1993) ................................................................. 25

*Mesa v. Prejean*,
    543 F.3d 264 (5th Cir. 2008) ................................................................. 24

*Monell v. Dep't of Social Services*,
    436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ........................... 20

*Mullenix v. Luna*,
    577 U.S. 7 (2015) .................................................................................... 28

*Murphy v. Kellar*,
    950 F.2d 290 (5th Cir. 1992) ................................................................. 19

*Norton v. Dimazana*,
    122 F.3d 286 (5th Cir. 1997) ................................................................. 25

*Okon v. Harris Cnty. Hosp. Dist.*,
    426 Fed. App'x 312 (5th Cir. 2011) ....................................................... 23

*Petzold v. Rostollan*,
    946 F.3d 242 (5th Cir. 2019) ................................................................. 22

*Phillips v. Monroe Cnty.*,
    311 F.3d 369 (5th Cir. 2002) ................................................................. 18

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) ............................................................21, 25

*Porter v. Epps*,
    659 F.3d 440 (5th Cir. 2011) ................................................................. 26

*Rios v. City of Del Rio*,
    444 F.3d 417 (5th Cir. 2006) .................................................................... 23

*Roberts v. City of Shreveport*,
    397 F.3d 287 (5th Cir. 2005)................................................................... 24

*Saenz v. City of El Paso*,
    637 F. App'x 828 (5th Cir. 2016) ........................................................... 22

*Sanders-Burns v. City of Plano*,
    594 F.3d 366 (5th Cir. 2010).................................................................. 26

*Speck v. Wiginton*,
    606 F. App'x 733 (5th Cir. 2015)........................................................... 22

*SW Bell Tel. L.P. v. City of Houston*,
    529 F.3d 257 (5th Cir. 2008) .................................................................. 19

*Vann v. Paxton*,
    No. 4:18-CV-00570-ALM-CAN, 2019 U.S. Dist. LEXIS 127672
    (E.D. Tex. Apr. 18, 2019) ...................................................................... 19

*Whitley v. Hanna*,
    726 F.3d 631 (5th Cir. 2013) .................................................................. 22

*Williams v. Luna*,
    909 F.2d 121 (5th Cir. 1990) .................................................................. 23

## STATUTES

42 U.S.C. § 1983 ................................................................................................ 18

Fed. R. Civ. P. 56 .............................................................................................. 13

## IV. FACTUAL BACKGROUND

2.      This is a lawsuit was brought against Galveston County and two Galveston County employees, Officer Tran and Sheriff Trochesset, among the other named Defendants, stemming from the arrest, incarceration, and medical treatment of Plaintiff Enrique Courtney Huber ("Plaintiff" or "Mr. Huber"), who is a citizen of Mexico.

3.      Plaintiff was arrested in Galveston County on or about June 11, 2018, by League City police officers for unlawful criminal trespass at the South Shore Harbor Resort in League City, Galveston County, Texas. He was transported to the League City jail in Galveston County where he was additionally charged with criminal mischief due to damaging League City property. He was thereafter transferred to the Galveston County Jail, and the United States Department of Homeland Security issued an immigration detainer for Plaintiff. Plaintiff was provided medical care at the Galveston County Jail during his brief incarceration, in which he was combative and uncooperative. The Galveston County District Attorney's Office prosecuted Plaintiff in relation to his arrest and, on or about June 22, 2018, Plaintiff was convicted of criminal mischief and released to Homeland Security on the immigration detainer.

4.      On September 2, 2020, Plaintiff filed suit in Harris County District Court under 42 U.S.C. § 1983, alleging Fourth and Fourteenth Amendment violations based on poor conditions of confinement, delay or denial of medical care, failure to maintain or supervise, illegal detention, and excessive force. [*See* Exhibit 1—Plaintiff's First Amended Petition.]

5. On Monday, November 23, 2020, the County Defendants timely removed this case to federal court because Plaintiff's claims involve federal questions, and there is diversity of citizenship. [Dkt. 1.]

6. The County Defendants then timely filed a Motion to Dismiss, on December 9, 2020, in which they sought dismissal or, alternatively, a transfer of this cause to the Southern District of Texas, Galveston Division for proper venue. [Dkt. 10.]

7. Plaintiff did not file a response to the previously filed Motion to Dismiss but filed an Amended Petition on December 21, 2020, that left the allegations against the County Defendants, and other defendants, virtually unchanged. [Dkt. 13.]

8. Without granting or denying the County Defendants' previously filed Motion to Dismiss, the Court granted the request for alternate relief and transferred the case from the United States District Court for the Southern District of Texas, Houston Division to the United States District Court for the Southern District of Texas, Galveston Division. [Dkt. 27.] The Court has not made a substantive ruling on the previously filed Motion to Dismiss. [Dkt. 13.]

## V.   UNDISPUTED FACTS

9. Listed below is a timeline of events pertaining to Plaintiff's 12-day imprisonment in the Galveston County Jail, beginning on June 11, 2018:

**June 11, 2018**

8:48 p.m.     Defendant's booking process was initiated. [*See* Exhibit 2—Inmate Log at pg. 2.]

| | |
|---|---|
| 8:52 p.m. | Defendant assigned to cell location. [*Id.*] |

**June 12, 2018**

| | |
|---|---|
| 4:06 a.m. | Defendant moved to new cell location. [*Id.*] |

| | |
|---|---|
| 1:36 p.m. | Defendant moved to new cell location. [*Id.*] |

| | |
|---|---|
| 8:23 p.m. | LVN Jessica Brooks of the Galveston County Jail medical staff wrote the following report after evaluating Defendant: "Pt. brought in for acting strange in the pod per Pod deputy….Pt. states he is in a Bipolar crisis for 10 days he takes (sic) Iamicital 100mg and he gets it over the counter in Mexico City and he's handicap. Pt. asked if he has a pre-scription for that medication pt. states 'No, [i]t's a catch 22.' Pt. then states that he just need some whiskey, salt, water and something to eat. Pt then asked why he didn't eat pt. then states that he thought that (sic) some one put something in his food. Pt. states, 'I was para-noid.'" [Exhibit 3—Medical Records at pg. 5.[1]] |

| | |
|---|---|
| 11:32 p.m. | Defendant moved to new cell location for medical reasons. [Exhibit 2 at pg. 2.] |

**June 13, 2018**

| | |
|---|---|
| 8:05 p.m. | Defendant involved in Jail Incident # 18001410. [*Id.*] |

| | |
|---|---|
| 8:13 p.m. | Defendant moved to new cell location for medical reasons. [*Id.*] |

| | |
|---|---|
| 8:28 p.m. | LVN Terry Haneline of the Galveston County Jail medical staff wrote the following report after evaluating Defendant: "Pt flooded cell and was informed to remove blanket from window. Upon deputies enter-ing pt cell it was noted that there was a blanket [tied] in a knot around stool of table. Pt then brought to medical [for] evaluation. Pt very talk-ative and speaking between Spanish and English. Pt demanding to see "Embassy of his state. Pt stating "I have money, I have a jet at Hobby airport. I want to speak with my embassy." [Exhibit 3 at pg. 5.] |

---

[1] Exhibit under seal.

9:30 p.m.    Galveston County Jail requests disciplinary hearing regarding Jail Incident # 18001410. [Exhibit 2 at pg. 2.]

**June 14, 2018**

12:25 a.m.    Defendant involved in Jail Incident # 18001413. [*Id.*]

8:45 a.m.    LPC Ana Lansi of the Galveston County Jail medical staff wrote the following report after conducting a wellness check on Plaintiff: "Overall demeanor was hypo-manic….Delusional thought process present with pt stating the Mexican embassy needs to be contacted so they can help him get out and he can get to his plane at a local airport and get back to his wealthy home hidden in the mountains." [Exhibit 3 at pg. 25.]

8:37 p.m.    Dr. Mireya Hansen of the Galveston County Jail medical staff wrote the following report after evaluating Defendant: "Patient reported to be manic, and continued to have pressured speech, and grandiose thinking. He gives history of taking Lamictal in Mexico. He was placed on detox checks in case this is a substance induced delirium. Will start Lithium 300mg po bid due to patient's presentation. He [has] an appointment to see me in 2 weeks." [Exhibit 3 at pg. 5.] Following chart review and discussion with other mental health professionals, Dr. Hansen recommended he be medicated with Lithium at a dose of 300 mg twice daily. [*See* Exhibit 8—Affidavit of Mireya Hansen.[2]]

**June 15, 2018**

9:00 a.m.    LPC Ana Lansi of the Galveston County Jail medical staff wrote the following report after conducting a wellness check on Plaintiff: "Pt presented as alert with labile affect, marginally cooperative with resistant behavior and tangential speech pattern….Grandiose delusions also present with pt stating he is a very important man in Mexico and other countries and their consulate needs to be contacted so a search party can be sent out to get him….Pt was advised psychiatrist Dr. Hansen has started him on Lithium (300mg, BID) to address his

---

[2]    Exhibit filed under seal.

Bipolar Disorder, to which he stated he would not take anything other than Lamictal….Pt was educated on the importance of medication compliance, to which he stated he would refuse the medication." [Exhibit 3 at pg. 7.]

2:01 p.m.      Defendant moved to new cell location due to medical clearance and pending disciplinary action. [Exhibit 2 at pg. 1.]

**June 16, 2018**

9:03 a.m.      RN Allison Iovine of the Galveston County Jail medical staff wrote the following report after unsuccessfully attempting to evaluate Defendant: "Deputies unable to open door because pt is agitated. Will check back later." [Exhibit 3 at pg. 5.]

**June 17, 2018**

8:31 a.m.      Defendant moved to new cell location for medical reasons. [Exhibit 2 at pg. 1.]

9:17 a.m.      Defendant involved in Jail Incident # 18001441. [*Id.* at pg. 1.]

1:06 p.m.      RN Tiffany Hansen of the Galveston County Jail medical staff wrote the following report after evaluating Defendant: "Responded to male FSP after deputy called stating patient was vomiting. Male in cell leaning over drain in floor spitting and belching, noted small amount of clear mucous on the cell floor with empty water cup. Patient states 'I feel like I have the worst hangover ever.' When asked if patient used alcohol or drugs prior to arrival patient states 'yes, I did with some kids' 'I smoked it and it has to be that synthetic stuff.' 'I have been delusional.' 'How do people smoke that all the time.'" [Exhibit 3 at pg. 4.]

**June 19, 2018**

10:23 a.m.     Defendant moved to new cell location due to medical clearance. [Exhibit 2 at pg. 1.]

**June 21, 2018**

11: 33       LVN Terry Haneline of the Galveston County Jail medical staff wrote the following report after unsuccessfully attempting to evaluate Defendant: "Unable to perform PM Detox check – unknown substances as pt is very aggressive and vocal. Banging on cell door, screaming and cussing. Pt stated several times 'I want to kill myself' while I am making seg. rounds. Pt demanding to speak with the consulate, his lawyer, and that I 'examine my ass because the deputy put something up my ass.' As I walked away pt again yelling, banging on door and states 'I want to kill myself.'" [Exhibit 3 at pg. 4.]

11:45 p.m.   Defendant moved to new cell location due to medical clearance. [Exhibit 2 at pg. 1.]

**June 22, 2018**

12:39 a.m.   Defendant involved in Jail Incident # 18001490. [*Id.*]

9:00 a.m.    LPC Ana Lansi of the Galveston County Jail medical staff wrote the following report after conducting a wellness check on Plaintiff: "Pt presented as alert though uncooperative with labile mood and resistant behavior. Thought process was delusional and speech pattern was pressured….pt was rehoused…after he stated several times 'I want to kill myself,' to a nurse while she was completing segregation rounds in lockdown pod. When aforementioned was inquired upon during present evaluation, pt stated, 'I never said that. What I said was there's heroin being put in my food.' When asked how he knew that, pt stated, 'I know. I see them do it.' Pt then stated his rights were being violated because 'none of the countries where I'm a citizen have been called, so their embassies know I'm here and can save me.' Pt then stated, 'I'm going to refuse any care and medication until you people do that.'" [Exhibit 3 at pg. 22.]

3:50 a.m.    Defendant removed from old cell location due to pending transfer. [*Id.*]

4:56 a.m.    Defendant released and transferred to another jail facility. [*Id.*]

## VI. SUMMARY JUDGMENT STANDARD

10.     Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

11.     The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56 (c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## VII. ARGUMENT

**A.  Plaintiff has failed to state viable claims against County Defendants because he does not adequately state how County Defendants deprived Mr. Huber of any constitutional rights.**

12.     In his Petition, Plaintiff makes the following allegations against the County Defendants:

13.     ALLEGATION:

> 29.     Upon arrival at the Galveston County Jail, Mr. Huber was not taken to the Galveston County Jail medical department. Thus a medical intake was never performed for Mr. Huber.

[Exhibit 1 at ¶ 29.]

14.     RESPONSE: This is plainly contradicted by Plaintiff's Intake Screening Form. [*See* Exhibit 4—Intake Screening.[3]] A four-page intake screening form for Defendant Enrique Courtney Huber was prepared by MA Emily Hall on June 11, 2018 at 9:02 p.m.

15.     ALLEGATION:

> 30.     Despite the fact that a medical intake was never performed, Mr. Huber repeatedly told the jail and/or medical staff that he had bipolar disorder and needed his medication.

[Exhibit 1 at ¶ 30.]

16.     RESPONSE: This allegation is contradicted by the evidence. As a matter of fact, Defendant provided the following responses on his inmate questionnaire:

---

[3]     Exhibit filed under seal.



| 2. | Do you have any medical problems that require immediate attention? | ○ Yes (specify)<br>◉ No |
|---|---|---|
| 3. | Do you have any medical problems that we should know about to provide you care? | ○ Yes (specify)<br>◉ No |

[Exhibit 4 at pg. 1.]

| 18. | Are you currently detoxing? | ○ Yes (specify from what substance)<br>◉ No |
|---|---|---|
| 19. | Have you had withdrawal problems such as seizures or blackouts from alcohol or drugs? | ○ Yes<br>◉ No |
| 20. | Do you drink alcohol or take drugs regularly and never stopped? | ○ Yes<br>◉ No |
| 21. | Is person known to jail to have a history of detox problems in the past? | ○ Yes<br>◉ No |
| 22. | Did the patient answer yes to 10,14, or 18-21?<br>(Answering yes would trigger withdrawal screening and treatment plan) | ○ Yes<br>◉ No |

[Exhibit 4 at pg. 2.]

17.    In his intake questionnaire, Plaintiff clearly indicates that he does not have any medical problems for which he requires immediate attention or that the County Defendants should be aware of.

18.    ALLEGATION:

> 32.    Due to his arrest and missed doses of medication, Mr. Huber was in a bipolar state.

> 35.    Mr. Huber's bipolar disorder continued. He received no medical attention from the Galveston County jail medical staff.

[Exhibit 1 at ¶¶ 32, 35.]

19.     RESPONSE: As discussed above, Plaintiff received an intake screening and medical attention from six (6) different members of the Galveston County Jail medical staff beginning almost immediately after he was booked on July 11, 2018. Plaintiff was evaluated by Dr. Mireya Hansen on June 14, 2018 at 8:37 p.m., less than three (3) days after being booked in the jail.

20.     Following chart review and discussion with other mental health profession-als, Dr. Hansen prescribed Lithium for Mr. Huber at a dose of 300 mg twice daily. [*See* Exhibit 8—Affidavit of Mireya Hansen.] Mr. Huber took his medication daily from the time it was prescribed by Dr. Hansen up until he was released, with two exceptions. He only missed two morning doses, one on June 22, 2018, and one on June 23, 2018. [Exhibit 6—Refusal For Treatment.[4]] Mr. Huber was released on June 23, 2018, before Dr. Hansen could see him for his next scheduled appointment.

21.     ALLEGATION:

> 37.     After Mr. Huber returned to jail, he again informed the jailers that he was off his medication and was having thoughts of suicide.
>
> 38.     Instead of receiving the necessary medical attention from the Galveston County jail medical staff for his bipolar disorder, Mr. Huber was placed in punitive solitary confinement.

[Exhibit 1 at ¶ 37–38.]

---

[4]     Exhibit filed under seal.

22.     RESPONSE: Following the passage of the Sandra Bland Act, if an inmate is exhibiting signs of substance withdrawal or mental illness, it is Galveston County Jail policy for the prisoner to be placed in solitary confinement for their own protection. This policy is justified by a number of reasons, including protection of the impaired inmate from other inmates, suicide prevention, and giving the inmate a closer physical proximity to the medical team. [*See* Exhibit 7—Affidavit of Kevin Walker and Exhibit 8—Hansen Affidavit[5].]

23.     ALLEGATION:

> 39.     While in solitary confinement, Mr. Huber was subjected to the most heinous conditions.

[Exhibit 1 at ¶ 39; *see also* ¶ 40–63.]

24.     RESPONSE: When placed in solitary confinement, inmates reside in padded cells that meet Jail-standard requirements as approved by the Texas Jail Commission (the "Commission"). [*See* Exhibit 7—Walker Affidavit.]

25.     ALLEGATION:

> 78.     After his intake evaluation by CCA medical, he was rushed to a Herman Memorial hospital for treatment.
>
> 79.     Hermann Memorial found out that he had a dislocated jaw, memory loss, and had visual impairment.

---

[5]     Exhibit filed under seal.

[Exhibit 1 at ¶ 78–79.]

26.     RESPONSE: Plaintiff drastically mischaracterizes the conclusions stated in the Memorial Hermann Report. The report found as follows:

> CT's reviewed. Brain and c-spine neg for acute process. Facial ct reveal suspected right TMJ dislocation. however, this does not correlate with clinical exam. Pt has almost normal ROM of jaw and no right sided jaw pain. No swelling, trauma, or deformity noted. No clicks with opening and closing mouth.

[Exhibit 5—Memorial Hermann Report at pg. 1. [6]]

27.     Additionally, County Defendants' Motion for Summary Judgment should be granted for the reasons outlined below:

**(1)     Plaintiff has failed to properly plead Section 1983 claims and actions under "color of law."**

28.     Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes another to be deprived of a federally protected constitutional right. 42 U.S.C. § 1983; *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002).

29.     To pursue a claim under Section 1983, a plaintiff must (a) allege a violation of rights secured by the Constitution or laws of the United States and (b) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *SW Bell Tel. L.P. v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). Simply asserting that the defendant in question was acting under "color of state law" is not sufficient; the plaintiff

---

[6]     Exhibit filed under seal.

must plead sufficient facts showing that the defendant was acting under color of state law. *Bustos v. Martini Club*, 599 F.3d 458, 465–66 (5th Cir. 2010).

30.    Further, a Plaintiff bringing a Section 1983 claim action must "specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). To successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

31.    "A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct." *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 U.S. Dist. LEXIS 80301, at *20 (S.D. Tex. June 22, 2015) (Ellison, J.) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)). *See also Vann v. Paxton*, No. 4:18-CV-00570-ALM-CAN, 2019 U.S. Dist. LEXIS 127672, at *22-23 (E.D. Tex. Apr. 18, 2019); *Cobarobio v. Midland Cnty.*, No. MO:13-CV-00111-RAJ, 2015 U.S. Dist. LEXIS 193948, at *12–13 (W.D. Tex. Jan. 7, 2015) (dismissing Section 1983 claims where plaintiff "lump[ed] Defendants together with no effort to distinguish them.").

32.    Here, Plaintiff largely groups his allegations against all named Defendants as a whole and fails to properly distinguish the complained-of conduct. [*See* Exhibit 1 at ¶¶ 1, 107, 108, 112, 114, 122, 125, 126, 140, 145, 146.]

33.    The global allegations asserted against "Defendants" throughout Plaintiff's Petition do not specify the personal involvement of each defendant or properly distinguish

the conduct under color of law as required under Section 1983 and federal pleading standards. As such, the County Defendants should be granted summary judgment on Plaintiff's claims.

**(2)    Plaintiff has failed to properly plead *Monell* liability.**

34.    It has long been established that a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). A governmental unit may incur liability under § 1983 only for a deprivation of a constitutional right that is inflicted pursuant to an official policy or custom. *Id.* at 690–91.

35.    A plaintiff has the burden of pleading and proving the elements of liability under Section 1983. "A municipal liability claim under § 1983 requires a showing that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Bustos*, 599 F.3d 458, 467 (5th Cir. 2010) (quotation omitted); *see also Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). To meet the "moving force" element, a plaintiff is required to show a direct causal connection between the policy and the deprivation, which is more than a mere "but for" coupling. *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

36.    An official policy must be either: (1) a policy that is adopted officially by lawmakers or by an official to whom the lawmakers have delegated policy-making authority, or (2) a persistent, widespread practice of city officials or employees which, although not adopted through official channels, is so common that it is accepted as official policy.

*Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023). Plaintiff must show that the policy is either facially unconstitutional, or that it was adopted with deliberate indifference to the known or obvious consequences. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 297, 403 (1997)). To establish deliberate indifference, the prisoner must show that (1) the defendant was aware of specific facts from which an inference of excessive risk to the prisoner's health or safety could be drawn, (2) the defendant actually drew an inference that such a potential for harm existed, and (3) that defendant disregarded that risk. *Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 305 (5th Cir. 2020). Plaintiff puts forth insufficient allegations of the existence of an official policy or custom, and fails to plead facts showing how any such policy or custom rises to the level of deliberate indifference.

37. Plaintiff haphazardly alleges that various wrongful and excessive force policies exist in Galveston County for the League City and Galveston County Jails. Plaintiff fails to plead sufficient facts in support of these claims because he does not specify what training was, or was not, provided that was a causal link to Plaintiff's alleged harms. *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (upholding dismissal of failure-to-train claim where complaint alleged "no facts about what training [Defendant City of Granbury] provided or failed to provide.").

38. "A plaintiff must allege facts to plausibly suggest the municipality's deliberate indifference to the need for proper training." *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016). Plaintiff does not adequately describe how the County Defendants were

deliberately indifferent to the proper training of employees in its policies or how previous acts against other inmates were similar to Plaintiff's harms. Furthermore, since Plaintiff has failed to demonstrate a violation of his constitutional rights, Plaintiff concomitantly has failed to establish that an official policy was the moving force behind any such violation. *See*, e.g., *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of [the plaintiff's] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."). Accordingly, Plaintiff's claims cannot survive summary judgment.

### (a) The allegation that a policymaker promulgated or ratified an alleged policy or custom is insufficient.

39. Plaintiff must prove not only the existence of a policy or custom; the plaintiff also has the burden of showing that the policy or custom caused the alleged constitutional violation. A supervising official can be held liable if that official, with subjective knowledge of serious harm, fails to supervise a subordinate, and this failure causes a pretrial detainee's rights to be violated. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Thus, without a constitutional violation, there can be no supervisory liability. *See Estate of Henson v. Callahan*, 440 F. App'x 352, 357 (5th Cir. 2011) ("The causation prong explicitly requires an underlying constitutional violation before holding a supervisor liable.").

40. Plaintiff has failed to allege sufficient facts that Sheriff Trochesset participated in establishing an unwritten policy or participated in any acts that might have caused Plaintiff's supposed harms sufficient to establish supervisor liability. While Sheriff

Trochesset's duties include overseeing jail operations, Trochesset had no personal involvement with Plaintiff. Liability can only arise from proof of an unconstitutional policy that caused Plaintiff's harms.

41.     Plaintiff's claims are insufficient on their face because he does not adequately distinguish between Defendants. Instead, Plaintiff issues a broad complaint against all Defendants that there was a failure to train or supervise.

42.     Plaintiff does not meet his pleading requirements as to how Galveston County officials implemented policies related to the jail facilities or had knowledge of any such policies. *See Okon v. Harris Cnty. Hosp. Dist.*, 426 Fed. App'x 312, 316 (5th Cir. 2011). The doctrine of *respondeat superior* does not apply in Section 1983 actions and, therefore, supervisory officials are not liable for the acts of subordinates based on a theory of vicarious liability. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990); *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). Consequently, summary judgment for Sheriff Trochesset, Officer Tran, and Galveston County is appropriate.

> **(b)     Insufficient allegations of a moving force and deliberate indifference.**

43.     In the context of a failure to supervise or train claim, a plaintiff must show that: (1) the supervisor either failed to supervise or train his subordinates; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375 at 381 (5th Cir. 2005); *Mesa v. Prejean*,

543 F.3d 264, 274 (5th Cir. 2008). A single instance of lack of training or supervision is generally not sufficient to demonstrate deliberate indifference. *Mesa*, 543 F.3d at 274. Furthermore, a defendant cannot be held liable based on general allegations that the injury could have been prevented if the employees had received better or additional training. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Rather, Plaintiff must demonstrate, with specificity, how a particular training program is defective. *Id*. Demonstrating that the defendant was negligent, committed medical malpractice, or failed to act reasonably is not enough to show a constitutional violation. *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

44.     Plaintiff has failed to produce any evidence sufficient to establish constitutional fault on behalf of the County Defendants. Here, the only fact used to support Plaintiff's bare assertions specific to Galveston County pertains to the County allegedly not providing Plaintiff with any toilet paper or an opportunity to use the toilet or shower. [Exhibit 1 at ¶ 46.] Regarding Sheriff Trochesset, the only specific facts of an alleged constitutional violation pertain to him allegedly being aware that there would be inmates, like Plaintiff, who had pre-existing conditions requiring medication, supervision, and additional medical care. [*Id*. at ¶ 119.] Regarding Officer Tran, Plaintiff complains of excessive force because he was allegedly slammed to the ground by Officer Tran and hit in the face with a blunt force object while Plaintiff was aggressive, combative, and in a suicidal state. [*Id*. at ¶ 113.]

45.     Such facts alleged against the County Defendants do not rise to the extremely high standard that Plaintiff is required to meet to prove deliberate indifference. "[P]laintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752 at 756 (5th Cir. 2001) (quotation omitted). None of the facts alleged in Plaintiff's Petition show that the County Defendants were aware of a substantial risk of harm, yet consciously disregarded such risk. Plaintiff's allegations do not amount to deliberate indifference simply because Plaintiff disagrees with the nature of medical treatment he received or complains of delays in treatment. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

46.     Further, Plaintiff does not plead that policies or practices caused, or were the "moving force" behind, any deprivation or violation of Plaintiff's rights. Each alleged policy or custom must be independently measured against the question of whether causation is established. *See,* e.g., *Piotrowski*, 237 F.3d at 581–83. Plaintiff does not establish any facts showing a causal link between any alleged failure and his supposed damages. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). For example, in his Petition, Plaintiff alleges that in his medical evaluation at (sic) "Hermann Memorial" hospital, it was concluded that he had a "dislocated jaw," in addition to suffering other vague harms such as "memory loss" and "visual impairment." [Exhibit 1 at ¶ 79.] However, Plaintiff has failed to provide any evidence of causation linking County Defendants to any of these alleged injuries.

Furthermore, the Memorial Hermann Report states, "Pt has almost normal ROM of jaw and no right sided jaw pain. No swelling, trauma, or deformity noted. No clicks with opening and closing mouth." [Exhibit 5—Memorial Herman Report at pg. 1.] The Report further details, "[w]e will not attempt reduction of possible TMJ dislocation as symptoms are minimal and *not certain of dislocation*....Speaking without difficulty." (emphasis added). [*Id.* at pg. 1.]

47.     The competent summary judgment evidence reflects that all Galveston County Jail employees met the training requirements set by Texas law. The Fifth Circuit of Appeals for the Fifth Circuit has held that when law enforcement officers have received the training required by Texas law, the plaintiff must show that the legal minimum amount of training was inadequate. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381–82 (5th Cir. 2010). However, Plaintiff has offered no evidence demonstrating that the minimum training required by the state of Texas is inadequate. Viewing the evidence in the light most favorable to Plaintiff, there are no genuine disputes of material fact. Plaintiff has failed to establish that Galveston County's policies or training of staff violated Plaintiff's constitutional rights.

**B.     Sheriff Trochesset and Officer Tran have qualified immunity.**

48.     Even if Plaintiff is entitled to relief against Sheriff Trochesset and Officer Tran in their individual capacity for acting under color of state law (which he is not), they are entitled to qualified immunity under Section 1983, and thus should be granted summary judgment on Plaintiff's claims.

49.     In conducting a qualified immunity analysis, each defendant's conduct must be examined individually. *See Meadours v. Ermel*, 483 F. 3d 417, 422 (5th Cir. 2007); *Gray v. Brazoria Cnty.*, 2017 WL 713797, at *6 (S.D. Tex. Feb. 23, 2017). The Supreme Court has found that in certain circumstances, a tradition of immunity is firmly rooted in the common law, and one such example includes qualified immunity for prison officials and officers. *Zone*, 260 F. Supp. 3d at 762, n. 10.

50.     Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendant is entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004).

51.     The first prong of the test requires the court to determine whether Plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Freeman*, 369 F.3d at 863. If a constitutional right was violated, under the second prong, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (quoting *Anderson v. Creighton* 483 U.S. 635, 640 (1987)).

52.     When the defendant asserts a qualified immunity defense, the burden of proof at the summary judgment stage shifts to the plaintiff who must rebut the qualified immunity defense by establishing a genuine issue of material fact as to whether the defendant's actions violated clearly established law. *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023). To defeat qualified immunity, a plaintiff "must plead specific facts that…allow the court to draw the reasonable inference that…defeat[s]" the immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

53.     Here, the claims against Sheriff Trochesset and Officer Tran are barred because they are entitled to qualified immunity. Plaintiff has failed to plead facts showing that Sheriff Trochesset and Officer Tran acted in a way that was objectively unreasonable or knowingly violated the law. Further, Plaintiff has not met the substantial hurdle of alleging facts that Sheriff Trochesset or Officer Tran ignored Plaintiff's statements or actions or otherwise intentionally mistreated Plaintiff. Plaintiff also does not plead facts showing that Sheriff Trochesset or Officer Tran's actions were deliberately indifferent to him.

54.     Accordingly, Sheriff Trochesset and Officer Tran should be granted summary judgment on Plaintiff's Section 1983 claims because they are qualifiedly immune from suit.

**C.** **Plaintiff cannot recover punitive damages against Galveston County.**

55.     Plaintiff seeks exemplary/punitive damages against all defendants. [Dkt. 13 at ¶ 181(h).] Defendants are entitled to summary judgment on Plaintiff's claim for exemplary/punitive damages against Galveston County because a county cannot be liable for such damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that, because punitive damages assessed against a governmental entity punishes taxpayers, a county is not liable for such damages). *See also Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985) ("In addition, punitive damages are not available under § 1983 from a municipality…").

## VIII. REQUEST FOR RELIEF

56.     FOR THESE REASONS, Defendants Galveston County, Officer Tran, and Sheriff Henry Trochesset respectfully request the Court grant the County Defendants' Motion for Summary Judgment, set a hearing on the award of attorney's fees for the prevailing party, and grant any other relief justified by law or equity.

Respectfully submitted,

**MILLS SHIRLEY L.L.P.**
2228 Mechanic St., Suite 400
Galveston, TX 77550
Phone/Fax: 409.761.4001

By: _____
    Robert E. Booth
Texas Bar No. 24040546
rbooth@millsshirley.com
    Jesse G. Potts
Texas Bar No. 24126325
jpotts@millsshirley.com

**ATTORNEYS FOR DEFENDANTS**

**GALVESTON COUNTY, OFFICER
TRAN, AND HENRY TROCHESSET**

## CERTIFICATE OF SERVICE

By my signature below, I certify that I served a copy of this document on the following parties on **March 28, 2023:**

Plaintiff, Enrique Courtney Huber, through attorneys of record:

U.A. Lewis (myattorneyatlaw@gmail.com)
Okwudili Onyekwelu (oonyekwelu@thelewislaw.com)
Damion Millington (dmillington@thelewislaw.com)
**THE LEWIS LAW GROUP**
P.O. Box 27353
Houston, TX 77227
Phone: 713.570.6555

Defendants, Boon-Chapman Administrators, Inc. and Soluta, Inc., through their attorneys of record:

Christopher G. Rigler (crigler@thompsoncoe.com)
Zandra Foley (zfoley@thompsoncoe.com)
Cory S. Reed (creed@thompsoncoe.com)
**THOMPSON, COE, COUSINS & IRONS, LLP**
700 N. Pearl St., 25th Floor
Dallas, TX 75201
Phone: 713.403.8210

Defendants, CoreCivic, Inc. f/k/a Corrections Corporations of America and CoreCivic of Tennessee, LLC, through their attorneys of record:

Christopher Knudsen (cknudsen@serpejones.com)
Bart Frederick (bfrederick@serpejones.com)
**SERPE, JONES, ANDREWS, CALLENDER & BELL, PLLC**
2929 Allen Parkway, Suite 1600
Houston, TX 77019
Phone: 713.452.4400

Defendants, Galveston County, Officer Tran, and Henry Trochesset through their attorneys of record:

> Robert E. Booth (rbooth@millsshirley.com)
> Jesse G. Potts (jpotts@millsshirley.com)
> **MILLS SHIRLEY L.L.P.**
> 2228 Mechanic St., Ste 400
> Galveston, TX 77550
> Phone: 409.761.4001

By: _____
    Robert E. Booth
    Texas Bar No. 24040546