United States District Court
Southern District of Texas
**ENTERED**
April 16, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| ENRIQUE COURTNEY HUBER, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:21-cv-00089 |
| | § | |
| GALVESTON COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Plaintiff Enrique Courtney Huber ("Huber") originally sued Galveston County, Galveston County Sheriff Deputy Toan-Khoa Huu Tran ("Tran"), and Galveston County Sheriff Henry Trochesset ("Trochesset") (collectively, "Defendants") in Texas state court for civil rights violations pursuant to 42 U.S.C. § 1983.[1] After this case was removed to federal court, Huber filed an amended complaint. *See* Dkt. 13. Huber asserts constitutional claims against Defendants for (1) excessive force; (2) condition of confinement; (3) inadequate medical care; and (4) failure to train or supervise. As an alternative to his constitutional claims, Huber asserts a negligence cause of action against Galveston County. Tran and Trochesset are sued in their individual capacities. Defendants have moved for summary judgment. *See* Dkt. 40. Having reviewed the briefing, the record, and the applicable law, I **DENY IN PART** and **GRANT IN PART** Defendants' Motion for Summary Judgment.

---

[1] Judge Jeffrey V. Brown dismissed Huber's claims against two other defendants—CoreCivic, Inc. and CoreCivic of Tennessee, LLC—on July 27, 2021. *See* Dkt. 28. On October 17, 2022, Judge Brown granted Huber's voluntary dismissal of Soluta, Inc., and Boon-Chapman Benefit Administrators, Inc. *See* Dkt. 35. Huber's claims against a defendant identified as "Nurse Pittman" were dismissed on October 5, 2023. *See* Dkt. 45.

## BACKGROUND

On June 11, 2018, law enforcement arrested Huber for criminal trespass at the South Shore Harbor Resort in League City, Texas. After spending some time at the League City Jail, Huber was transported to the Galveston County Jail. What occurred at the Galveston County Jail is hotly disputed.

Defendants claim that Huber, who is not a United States citizen and has bipolar disorder, was "combative and uncooperative." Dkt. 40 at 7. For his part, Huber asserts that, upon his arrival at the Galveston County Jail, jail staff did not perform a proper medical intake on him. He says he needed that initial medical intake to obtain medication for bipolar disorder. Defendants counter by arguing that the summary judgment evidence conclusively establishes that Galveston County Jail staff performed seven medical evaluations or wellness checks on Huber while he was at the jail. Two additional evaluation attempts on Huber were unsuccessful due to Huber's unwillingness to cooperate.

Huber claims that after he informed Galveston County Jail staff that he had thoughts of suicide, they punitively placed him in solitary confinement. Once there, Huber claims, he "was forced to strip naked and placed in a cold cell with no windows"; "[t]he cell contained no sink, toilet, or bed"; and "[t]he cell lights were on 24 hours per day each day, making it impossible for [him] to sleep." Dkt. 13 at 7. Huber alleges "[h]e was given a small blanket that was not large enough to cover up his entire body in a fetal position; thus, he could not escape the constant light or seek warmth in the ice cold room." *Id.* Huber further claims he "was required to use a small hole in the middle of the cell on the floor to urinate, vomit, and defecate." *Id.* He avers that he did not have access to a sink, toilet, toilet paper, shower, or phone. Huber says that after he "suffered for days in solitary confinement," jail staff placed him in another cell block. *Id.*

Huber alleges that in his new cell, Tran, accompanied by an "unknown amount of jailers," entered the cell and used "a hand-held rigid plastic riot shield . . . to slam Mr. Huber to the concrete floor." *Id.* at 8. Tran then allegedly

handcuffed Huber and slammed his head on the floor again. Huber claims that jail staff sent him back to solitary confinement after this incident without providing him with medical treatment.

On June 22, 2018, Huber was convicted of criminal mischief, released from Galveston County Jail, and turned over to the U.S. Department of Homeland Security on an immigration detainer. Huber claims that while he "was in a cell getting ready to be transferred out of Galveston County Jail, Tran hit him [from] behind" and then struck him in the face with a blunt object. *Id.* at 9. This attack, Huber alleges, left him unconscious.[2]

## LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact issue is material "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). A genuine dispute of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"To satisfy its burden, the party opposing summary judgment is required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (cleaned up). At this stage, I "consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004). I "view all facts and inferences in the light most favorable to the nonmoving party." *Treme v. St. John the Baptist Par. Council*, 93 F.4th 792, 796 (5th Cir. 2024) (quotation omitted).

---

[2] I will not recount the remainder of Huber's allegations because they concern only defendants who have been dismissed from this case.

**B.     42 U.S.C. § 1983**

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (quotation omitted). "To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quotations omitted).

**C.     QUALIFIED IMMUNITY**

Tran and Trochesset claim they are entitled to qualified immunity. "Qualified immunity shields a government official from liability based on his performance of discretionary functions." *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (quotation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quotations omitted). The plaintiff "must rebut the defense by establishing a genuine fact dispute as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (cleaned up). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." *King*, 821 F.3d at 654 (quotation omitted).

"There are two aspects to qualified immunity: whether the plaintiff has alleged a violation of a constitutional right and whether the right at issue was

'clearly established' at the time of the alleged violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

**D.   MONELL LIABILITY**

In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), "the Supreme Court held that Congress intended § 1983 to apply to local government entities as well as to persons." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994). The Fifth Circuit has defined the contours of *Monell* liability:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom. *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. The three attribution principles identified here—a policymaker, an official policy, and the moving force of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (cleaned up).

Official policy exists in two forms. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Second, an official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's

knowledge and acceptance of the disputed conduct." *Zarnow*, 614 F.3d at 169. "Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy." *Paz v. Weir*, 137 F. Supp. 2d 782, 799 (S.D. Tex. 2001).

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

As a preliminary matter, I must address Huber's objections to a piece of summary judgment evidence offered by Defendants. Attached to Defendants' Motion for Summary Judgment is the Affidavit of Major Kevin Walker ("Walker"), a Major Sheriff in the Corrections Division of the Galveston County Sheriff's Office (the "Affidavit"). *See* Dkt. 40-7.

Huber objects to the following statements in the Affidavit:

1. [When placed in] solitary confinement, inmates reside in padded cells that meet jail-standard requirements as governed by the Texas Jail Commission (the "Commission").
2. The Commission has evaluated Galveston County Jail's solitary confinement cells, and they passed inspection.
3. All conditions to which Enrique Courtney Huber was subjected during his stay in solitary confinement meet the Commission's standards.
4. All Jail protocols were followed with respect to the placement of Enrique Courtney Huber . . . in solitary confinement during his stay in the Jail, spanning from June 11, 2018 to June 22, 2018.

Dkt. 42 at 3 (quoting Dkt. 40-7 at 1–2). Huber argues Walker has no personal knowledge of these statements and the statements are hearsay, conclusory, and speculative. Huber further argues the Affidavit "does not set forth the standard, nor does his statement even detail what cell Mr. Huber was assigned to and which of the various cells he was referring to meets the jail commission standards." Dkt. 42 at 4.

"An affidavit or declaration used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "The substance of an affidavit must *demonstrate* the affiant has

personal knowledge of the facts contained therein." *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 846 (S.D. Tex. 2011) (emphasis added). The Fifth Circuit has approvingly quoted the Ninth Circuit for the proposition that affiants' "'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.'" *DIRECTV, Inc. v. Budden*, c, 530 (5th Cir. 2005) (quoting *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)). Yet even though the Fifth Circuit allows a reasonable inference of an affiant's personal knowledge based on position, it is still well established that "conclusory assertions cannot be used in an affidavit on summary judgment." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007) (quotation omitted).

Walker has not demonstrated his personal knowledge or the relevance of the statements to which Huber objects. Regarding the first two challenged statements about the Commission's standards for solitary confinement and Galveston County Jail's compliance with those standards, Walker does not specify the substance of those standards or when the Commission's inspection occurred. Regarding the other challenged statements about the Galveston County Jail's conditions while Huber was there, Walker does not specify how long he has worked with the Galveston County Sheriff's Office or if he even held his position while Huber was detained. *See Truvia v. Connick*, 577 F. App'x. 317, 323 (5th Cir. 2014) (affirming district court's exclusion of an affidavit that purported to address a policy that predated his tenure); *Amie*, 253 F. App'x at 451 (affirming district court's striking of statements in an affidavit because there was "no indication [affiant] was ever involved" in the policies at issue or "possess[ed] any specialized knowledge" of those policies).

Because of this lack of detail about Walker's employment with Galveston County and his alleged knowledge of Huber's experience in Galveston County Jail,

I cannot find that Walker has personal knowledge of the challenged statements. As such, I **SUSTAIN** Huber's objections and will not consider the challenged statements in determining whether Defendants are entitled to summary judgment.

## ANALYSIS

I now turn to Huber's claims for: (1) excessive force against Defendants; (2) condition of confinement against Galveston County; (3) inadequate medical care against Defendants; (4) failure to train or supervise against Trochesset and Galveston County; and (5) negligence against Galveston County.

### A.   EXCESSIVE FORCE

Huber brings an excessive force claim against each Defendant.[3] "Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable." *Austin v. City of Pasadena*, 74 F.4th 312, 322 (5th Cir. 2023). To determine reasonableness, district courts weigh the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Austin*, 74 F.4th at 322–23 (quoting *Graham*, 490 U.S. at 396).

#### 1.   *Tran*

Huber describes two occurrences of excessive force by Tran: (1) handcuffing and slamming Huber to the ground in solitary confinement (the "First

---

[3] Huber claims that Defendants violated "his Fourth Amendment Constitutional right to be free from excessive force." Dkt. 13 at 14. Because Huber was a pretrial detainee, however, the relevant test is borne out of the Fourteenth Amendment. *See Johnson v. Hill*, 514 F. Supp. 3d 958, 966 (S.D. Tex. 2021) ("[P]retrial detainees are protected by the Fourteenth Amendment Due Process Clause 'from the use of excessive force that amounts to punishment.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989))).

Occurrence"), and (2) hitting Huber from behind and striking him in the face (the "Second Occurrence"). Tran asserts that he is entitled to qualified immunity. Thus, I must determine whether (1) Tran violated Huber's constitutional rights; and (2) Tran's actions were objectively unreasonable in light of clearly established law at the time of the violation. *See Pearson*, 555 U.S. at 232.

### a.   Violation of Constitutional Rights

I first must examine whether Tran's alleged conduct violated the Constitution. *See Cope*, 3 F.4th at 204. In the context of an excessive force claim, I am required to assess whether Tran's alleged use of force was objectively unreasonable. *See Austin*, 74 F.4th at 322.

### *(1)   The First Occurrence*

Huber makes the following allegations about the First Occurrence: Tran "injured [Huber's] shoulder and head due to his body's combined impact, hitting the . . . shield and force of being slammed to the floor by Tran and several other jailers"; "Tran handcuffed Mr. Huber and slammed Mr. Huber's already injured head to the concrete floor"; and the officers, including Tran, "continued to pin his head and body to the floor." Dkt. 13 at 8. In his deposition, Huber said the following about the First Occurrence:

> Well, the first time Officer Tran hurt me was while I was in my cell, and as you mentioned, I flooded my cell with toilet paper and he formed a human freight train along with another two or three other officers. And when that door opened, they ran in and they hit me with a protective riot shield. I was standing on top of my bunk and they ran in projecting me through the wall. I had first – I fell head first between the bunk and the toilet. Officer Tran dragged me out from my legs and he put his knee to my crotch repeatedly hitting me. I said, "You are hurting me." And he replied, "I know."

Dkt. 42-1 at 2.

In their Motion for Summary Judgment, Defendants make the conclusory assertion that Huber "has failed to plead facts showing that . . . Officer Tran acted in a way that was objectively unreasonable or knowingly violated the law." Dkt. 40 at 28. Tran does not provide his own explanation of what happened during this

alleged incident, or offer any justifications for his use of force. Tran fails to provide any competent summary judgment evidence describing what Huber actually did or whether Huber created safety or security concerns. Tran "alleges no facts from which [I] can determine what actions he took . . . . The absence of such facts makes it impossible for [me] to determine what happened in the [cell] and whether [Tran]'s actions were, or were not, objectively reasonable in light of those facts." *Hill v. Oguzie*, No. 3:19-cv-00021, ECF No. 38 at 12 (S.D. Tex. July 14, 2021) (denying summary judgment in § 1983 excessive force case). The Fifth Circuit has reversed the grant of summary judgment on similar facts. *See Fairchild v. Coryell Cnty.*, 40 F.4th 359, 362 (5th Cir. 2022) (holding summary judgment improper when guards allegedly used pepper spray against pretrial detainee in her cell four times; slammed her to the floor; handcuffed her while guard placed knee on her back; and held her face down for two minutes); *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993) (holding summary judgment improper when guards allegedly "slammed [plaintiff] against a wall and the jail's floor, handcuffed him and stomped on his back and legs" (quotations omitted)).

In sum, the record before me shows that genuine disputes of material fact exist regarding the *Kingsley* factors: the relationship between the need for the use of force and the amount of force used; the extent of Huber's injury;[4] any effort made by Tran to limit the force; the severity of the security problem; the threat reasonably perceived by Tran; and whether Huber was actively resisting. "These

---

[4] A plaintiff bringing an excessive force claim must show more than a *de minimis* injury. *See Hanks v. Rogers*, 853 F.3d 738, 744–45 (5th Cir. 2017). "However, the Supreme Court shifted the core judicial inquiry from the extent of the injury to the nature of the force used." *Contreras v. Wauson*, No. 5:21-cv-00038, 2023 WL 9508831, at *6 (N.D. Tex. July 5, 2023); *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. A[ pretrial detainee] who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Because there is a genuine dispute of material fact as to the nature of force Tran used against Huber, the same is true of the extent of Huber's injuries.

fact disputes preclude the entry of summary judgment on [Tran]'s defense of qualified immunity." *Hill*, No. 3:19-cv-00021, ECF No. 38 at 13.

### *(2)   The Second Occurrence*

Regarding the Second Occurrence, Huber alleges Tran "hit him [from] behind" while Huber was in a holding cell awaiting release. Dkt. 13 at 9. Huber alleges Tran then struck him in the face with a blunt object. *See id.* Again, Tran does not refute this allegation. He asserts only: "Regarding Officer Tran, [Huber] complains of excessive force because he was allegedly slammed to the ground by Officer Tran and hit in the face with a blunt force object while [Huber] was aggressive, combative, and in a suicidal state." Dkt. 40 at 24. In response, Huber argues "[t]he amount of force used against [him] does not balance out with the need to transfer him to enter his cell." Dkt. 42 at 9.

As with the First Occurrence, Tran did not respond to Huber's allegations about the Second Occurrence. The record before me, which contains allegations that Tran hit Huber from behind and struck him in the face with a blunt object, does not show the objective reasonableness of Tran's actions. It does not appear that Tran's use of force furthered some legitimate governmental goal. *See Contreras*, 2023 WL 9508831, at *5–6 (granting summary judgment where uncontroverted evidence showed "Plaintiff actively struggling against officers' attempts to contain him, and even breaking away from officers and fleeing toward a perpendicular hallway"); *Johnson*, 514 F. Supp. 3d at 970 (finding use of force against pretrial detainee objectively reasonable "for the legitimate purpose of obtaining Johnson's compliance with repeated orders to maintain institutional order and security"). Tran argues that Huber was "aggressive, combative, and in a suicidal state" at the time, Dkt. 40 at 24, but points to no evidence. In contrast to *Contreras* and *Johnson*, issues of material fact regarding Huber's behavior exist. In the Motion for Summary Judgment, Tran presents a timeline of Huber's stay at Galveston County Jail. That timeline includes notations of multiple "Jail Incidents," but does not specify what occurred during those incidents. *See id.* at 8–

12. Because I view all facts in the light most favorable to Huber, I cannot grant summary judgment on this excessive force claim because there are genuine disputes of material fact regarding the Second Occurrence. *See McIntosh v. Smith*, 690 F. Supp. 2d 515, 527 (S.D. Tex. 2010) ("[Tran]'s motion for summary judgment on [Huber]'s Fourteenth Amendment claim for [excessive force] must be denied because the legal question of whether Officer [Tran] is entitled to qualified immunity depends upon the resolution of genuine issues of material fact.").

### b.   Clearly Established Law

There is no question that the law protecting pretrial detainees such as Huber from excessive force had been clearly established during his stay in Galveston County Jail. *See Graham*, 490 U.S. at 395 n.10 ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *Fairchild*, 40 F.4th at 368 ("Within the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." (quoting *Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021))). In sum, there are genuine issues of material fact regarding whether Tran violated Huber's Fourteenth Amendment right to be free from excessive force as a pretrial detainee as to both the First and Second Occurrences. Thus, Tran is not entitled to qualified immunity at this stage on Huber's excessive force claim.

### 2.   *Trochesset*

Huber also brings an excessive force claim against Trochesset, claiming Trochesset "was aware there would be inmates, like Mr. Huber, who had pre-existing conditions requiring medication, supervision, and additional medical care" and "was personally involved in Mr. Huber's constitutional deprivation because he was responsible for the inmates' medical care, namely, their health, safety, and welfare." Dkt. 13 at 14. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a

qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quotation omitted). At this stage, Huber points no specific facts that would support an excessive force claim against Trochesset. Accordingly, Trochesset is entitled to qualified immunity and Huber's excessive force claim against Trochesset is dismissed.

### 3.   *Galveston County*

Huber raises an excessive force claim against Galveston County. As stated, Huber must show "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (quoting *Monell*, 436 U.S. at 694).

Huber states: "Galveston County violated Mr. Huber's right to be free from the use of excessive force because it promoted, adopted, and promulgated a policy or custom of allowing it's [sic] detention officers, including Tran, to utilize excessive force based on the inadequate training and supervision of his [sic] officers." Dkt. 13 at 15. But Huber points to no evidence of such a policy allowing officers to use excessive force. To "plead a practice so persistent and widespread as to practically have the force of law, [Huber] must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (cleaned up). All Huber does here is describe his own experience, and no evidence in the summary judgment record points to a policy of excessive force by Galveston County. "In order for municipal liability to attach, [Huber] must offer evidence of not simply a decision, but a decision by [Galveston County] itself to violate the Constitution." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (cleaned up). As such, Huber's excessive force claim against Galveston County fails at the summary judgment stage.

## B.   CONDITION OF CONFINEMENT

Huber also brings a condition of confinement claim against Defendants. "A condition of confinement case is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement." *Scott v. Moore*, 114 F.3d

51, 53 (5th Cir. 1997) (cleaned up).[5] When a plaintiff like Huber challenges his condition of confinement, "'the proper inquiry is whether those conditions amount to punishment of the detainee.'" *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (quoting *Bell*, 441 U.S. at 535). "[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation 'when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Hope v. Harris*, 861 F. App'x 571, 582–83 (5th Cir. 2021) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

> An unconstitutional condition of confinement of a pretrial detainee
>
> is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc. In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by jail officials, to prove an intended condition or practice. Proving a pattern is a heavy burden, one that has rarely been met in our caselaw. Further, to constitute impermissible punishment, the condition must be one that is arbitrary or purposeless, or put differently, not reasonably related to a legitimate goal.

*Shepherd v. Dall. Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (cleaned up).

To prove a condition of confinement claim, Huber "must show that: "(1) some rule, restriction, identifiable intended condition or practice, or a pervasive pattern of acts or omissions committed by a jail official exists, (2) that is not reasonably related to a legitimate governmental objective, and (3) that causes a violation of a detainee's constitutional rights." *Stevenson-Cotton v. Galveston Cnty.*, No. 22-40841, 2024 WL 138631, at *5 (5th Cir. Jan. 12, 2024) (citing *Duvall v. Dall. Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011)).

---

[5] Because pretrial detainees—who are presumed innocent until proven guilty—may not be punished, they "retain *at least* those constitutional rights that . . . are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (emphasis added). In other words, precedent regarding an Eighth Amendment condition of confinement claim applies with full force to a Fourteenth Amendment condition of confinement claim, if not more.

Huber's condition of confinement claim stems from his stint in solitary confinement at the Galveston County Jail. In their Motion for Summary Judgment, Defendants point to their policy of placing inmates "exhibiting signs of substance withdrawal or mental illness" into solitary confinement. Dkt. 40 at 17. The policy's justifications include "protection of the impaired inmate from other inmates, suicide prevention, and giving the inmate a closer physical proximity to the medical team." *Id.*

Huber alleges that when placed in solitary confinement, he was "forced to strip naked and placed in a cold cell with no windows." Dkt. 13 at 7. "The freezing cell only contained a hole in the ground for inmates such as Mr. Huber to use as a bathroom," Huber did not receive toilet paper, and he "was not allowed to take a shower." *Id.* at 16. He also alleges that a constant light prevented him from sleeping. The cell did not contain a bed, and Huber "was given a small blanket that was not large enough to cover up his entire body in a fetal position." *Id.* at 7. The record does not make clear how long Huber spent in solitary confinement, but he alleges he "suffered [there] for days." *Id.*

### 1.    *Tran and Trochesset*

To the extent Huber advances a condition of confinement claim against Tran and Trochesset in their individual capacities, it does not survive summary judgment. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Huber does not allege and points to no evidence showing that Tran or Trochesset had personal knowledge or involvement in the condition of his confinement at Galveston County Jail. *See Weber v. Stevens*, No. C.A. C-04-378, 2005 WL 2076280, at *5–7 (S.D. Tex. Aug. 26, 2005) (granting summary judgment where plaintiff did not allege that prison director and warden had personal knowledge of plaintiff's condition of confinement or authority to make improvements). Thus, any condition of confinement claim against Tran or Trochesset fails.

### 2.    *Galveston County*

It is critical to remember that to establish a condition of confinement claim against Galveston County, Huber "has two burdens: to show (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020). As the Fifth Circuit has explained:

> Under *Monell*, a plaintiff must show either an official policy or persistent and widespread customs. Under [a condition of confinement claim], the plaintiff must show an intended condition or practice, or show that jail officials' acts are sufficiently extended or pervasive to prove an intended condition or practice. We see no meaningful difference between these showings.

*Duvall*, 631 F.3d at 208 (cleaned up).

In this case, even if I assume the condition of Huber's confinement was unconstitutional, Huber has completely failed to allege—much less create a genuine issue of material fact—that a Galveston County policy, practice, or custom was the moving force behind the constitutional violation. I can infer from the record that Galveston County has a policy of placing inmates exhibiting signs of withdrawal or suicidal ideations in solitary confinement. *See* Dkt. 40 at 17. And I can infer that Galveston County has a policy of denying inmates in solitary confinement a bed, sink, or toilet—objects on which a suicidal inmates could attempt to harm themselves. But these conditions are obviously related to the legitimate government objective of protecting inmates from themselves, and Huber has not argued or pointed to evidence suggesting otherwise.

To the extent the lighting, temperature, lack of access to a shower, and being forced to strip naked are the conditions of which Huber complains, he has failed to allege—or present evidence creating a genuine issue of material fact—that these intended conditions or practices were pervasive and systemic. Tellingly, Huber's response to Defendants' Motion for Summary Judgment does not even address the condition of confinement claim. Because there is no genuine issue of material fact concerning the condition of confinement claim, it should be dismissed.

C.   **INADEQUATE MEDICAL CARE**

Next, Huber asserts claims of inadequate medical care against each Defendant. Huber "may succeed on a claim under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates 'deliberate indifference to serious medical needs' on the part of prison officials or other state actors." *Estrada v. Nehls*, 524 F. Supp. 3d 578, 594 (S.D. Tex. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "[A] prison official is deliberately indifferent to a pre-trial detainee's serious medical needs in violation of the Fourteenth Amendment if he (1) was subjectively aware of the risk and (2) disregarded the risk by failing to take reasonable measures to abate it." *Burton v. Owens*, 511 F. App'x. 385, 389 (5th Cir. 2013). "The conduct alleged must 'constitute an unnecessary and wanton infliction of pain' or 'be repugnant to the conscience of mankind.'" *Estrada*, 524 F. Supp. 3d at 594 (quoting *Estelle*, 429 U.S. at 104–06). Huber must prove both "objective exposure to a substantial risk of serious harm" and "subjective deliberate indifference to that risk." *Estrada*, 524 F. Supp. 3d at 594. To satisfy the subjective prong, Huber "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to [Huber]'s health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Id.* "An incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or [Huber]'s disagreement with his medical treatment are insufficient." *Id.* In sum, "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Huber alleges Defendants "were deliberately indifferent to [his] serious medical needs and denied adequate medical care to [him]." Dkt. 13 at 17. He alleges he never underwent a medical intake or received medication for his bipolar disorder, "nor [was he treated] while he was in a suicidal state, despite actual knowledge of his medical condition based on [his] statements." *Id.*

The summary judgment record includes medical records showing that Huber did, in fact, receive medical care throughout his time at Galveston County Jail. In his roughly 10 days there, medical staff performed an evaluation or wellness check on Huber seven times. *See* Dkt. 40 at 9–12 (quoting medical reports by the jail's medical staff on June 12, 13, 14, 15, 17, and 22); *see also* Dkt. 41-1 (Huber's medical records from his stay at Galveston County Jail). Additionally, on June 16 and 21, medical staff attempted to evaluate Huber, but could not, due to Huber's erratic behavior. *See* Dkt. 40 at 11–12. Further, Huber *did* undergo a medical intake screening, at which Huber indicated he did not have "any medical problems that require immediate attention" or "any medical problems that [the Galveston County Jail] should know about to provide [Huber] care." Dkt. 41-2 at 1.

Even further, the summary judgment record indicates that medical personnel at the Galveston County Jail prescribed medication to Huber. *See* Dkt. 41-1 at 22 ("[Patient] was advised psychiatrist Dr. [Mireya] Hansen has started him on Lithium (300mg, [twice a day]) to address his Bipolar Disorder"); *see id.* ("[Patient] was educated on the importance of medication compliance, to which he stated he would refuse the medication."). Dr. Hansen indicated that Huber took the medication daily, with only two exceptions. *See* Dkt. 41-5 at 1.

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Because the summary judgment record is clear that Huber underwent medical evaluations and took medication prescribed to him, Huber's allegations do not even approach the stout deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (multiple examinations and administered medications do not constitute deliberate indifference); *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003) (x-rays and administration of generic medications refute allegations of deliberate indifference); *Hall v. Thomas*, 190 F.3d 693, 698 (5th Cir. 1999) (inmate's refusal to take medication does not constitute deliberate indifference). Huber's mere

disagreement with any treatment provided to him does not satisfy the standard,. *See Tijerina v. Stanley*, 804 F. App'x 277, 278 (5th Cir. 2020).

As such, Huber's claim of inadequate medical care against Tran and Trochesset does not survive summary judgment. His claim against Galveston County also fails, as he has not brought forth evidence of a policy or custom of inadequate medical care. *See Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

## D.   FAILURE TO TRAIN OR SUPERVISE

### 1.   *Trochesset*

To survive summary judgment on this claim against Trochesset, Huber must show that "(1) [Trochesset] either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of [Huber]'s rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quotation omitted). The deliberate indifference prong requires Huber to "demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quotation omitted).

Huber alleges that Trochesset "failed to train or supervise Galveston County Jail and medical staff responsible for [his] care." Dkt. 13 at 18. Huber also makes the following allegations: Trochesset "allowed jail staff, including Tran, to use excessive force to detain inmates who suffered from mental illnesses"; "did not verify whether appropriate procedures were administered or whether the policies were followed by jail staff"; "did not enforce any disciplinary procedures for jail staff that failed to administer or follow written policies and procedures"; "failed to train the jail staff and nurses that were responsible for the care of Mr. Huber"; "failed to train the intake staff to properly screen and administer medication to Mr. Huber as he had a known medical condition"; "failed to train the jailers to monitor

and care for inmates with medical conditions"; "allowed untrained personnel without proper medical credentials and training to monitor inmates with known medical issues"; and "failed to adequately train jail and medical staff on properly recognizing inmates with serious medical conditions and at risk of injury." *Id.* at 18–19.

This claim for failure to train or supervise does not survive the summary judgment stage. First, the summary judgment record does not include evidence that would satisfy the deliberate indifference standard. *See Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) ("For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation omitted). Huber does not allege or present evidence of the requisite pattern of constitutional violations. Instead, he describes only his own experiences. The Fifth Circuit has "rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train." *Zarnow*, 614 F.3d at 170.

Additionally, a supervisor may be liable only when he "affirmatively participates in the acts that cause the constitutional deprivation, or [he] implements unconstitutional policies that causally result in the constitutional injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018). There is simply no factual basis in the summary judgment record for holding Trochesset liable in his individual capacity. Thus, Huber's failure to train or supervise claim against Trochesset does not survive summary judgment.

### 2. *Galveston County*

Huber brings the same failure to train or supervise claim against Galveston County. The elements of municipal liability under a failure to train or supervise

theory are identical. Huber must show "that (1) [Galveston County] adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate training policy directly caused [Huber]'s injury." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015). Huber cannot point to evidence in the record "related to [Galveston County]'s actual training program." *Id.* Because Huber has not established a constitutional violation relating to his failure to train or supervise claims, he certainly cannot establish a custom that would give rise to Galveston County's liability. This claim against Galveston County for failure to train or supervise fails.

## E.   NEGLIGENCE

Defendants argue they "are entitled to judgment as a matter of law on Plaintiff's claims," but fail to address Huber's negligence claim at all. Dkt. 40 at 1. Because Defendants fail to explain why summary judgment should be entered in their favor on the negligence claim, I am unwilling to grant summary judgment at this time.

I do, however, note that it "is well-settled that a district court may grant summary judgment *sua sponte*, so long as the losing party has ten days notice to come forward with all of its evidence in opposition to summary judgment." *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000) (quotation omitted). The Texas Tort Claims Act requires that Galveston County have received notice of Huber's negligence claim "not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE § 101.101(a). It does not appear as if that happened here. Huber's last day at the Galveston County Jail was June 22, 2018. According to the Notice of Removal, Huber "first served . . . Galveston County . . . on October 30, 2020." Dkt. 1 at 3. October 30, 2020 is far more than six months after June 22, 2018. I will give Huber 10 days to explain in writing why summary judgment should not be awarded to Galveston County on the negligence claim.

F.   LEAVE TO REPLEAD

There is one final issue to address. In his response to the Motion for Summary Judgment, Huber "requests the right to replead the facts" because he claims he did not have access to certain Galveston County Jail records. Dkt. 42 at 4. Huber makes this request more than a month after the discovery period ended. *Compare* Dkt. 37 (discovery deadline was March 13, 2023), *with* Dkt. 42 (Huber's response filed on April 19, 2023).

Although district courts "should freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), leave to amend is by no means automatic. *See Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). I consider the following factors when exercising discretion to allow or deny leave to amend: "the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith." *U.S. ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 392 (5th Cir. 2008).

Huber's request is futile because he "fails to apprise the district court of the facts that he would plead in an amended complaint."[6] *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (cleaned up); *see also Rombaugh v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018) (affirming district court's denial of motion to amend when Plaintiff "failed to apprise the court of the facts she would plead in her amended complaint"). Accordingly, Huber's request to replead the facts is denied.

## CONCLUSION

The Defendants' Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**. It is **DENIED** with respect to Huber's excessive force claim against Tran, and his negligence claim against Galveston County. It is **GRANTED** as to Huber's excessive force claim against Trochesset and Galveston County; and his condition of confinement, inadequate medical care, and failure to

---

[6] Huber alleges he "was subjected to the same conditions as Jesse C. Jacobs, who died in the Galveston County Jail FSP after he was sent there to detox from his medications instead of the medical unit." Dkt. 42 at 5. Yet Huber does not offer any other pertinent facts like *when* this alleged death occurred or *how* it is related to Huber's claims.

train or supervise claims against all Defendants. Huber has 10 days to explain in writing why summary judgment should not be awarded to Galveston County on the negligence claim for Huber's failure to timely provide notice under Tex. Civ. Prac. & Rem. Code § 101.101(a).

SIGNED this 16th day of April 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE